UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEVIN McKENNA and NASSAU COUNTY NEWS NY,

    *Plaintiffs*,

  -against-

NASSAU COUNTY, RICHARD J. NICOLELLO,
individually and in his official capacity as Presiding Officer
of the Nassau County Legislature, NASSAU COUNTY
POLICE DEPARTMENT and NASSAU COUNTY
POLICE OFFICER JOHN DOE

    *Defendants*.

2:23-CV-4286 (ARR) (ST)

**OPINION & ORDER**

ROSS, United States District Judge:

  Defendants Nassau County, Presiding Officer Richard J. Nicolello, Nassau County Police Department, and Nassau County Police Officer John Doe move to dismiss the complaint of plaintiffs Kevin McKenna and Nassau County News NY in its entirety. For the reasons set forth below, I grant defendants' motion in part and deny it in part.

**BACKGROUND[1]**

  Mr. McKenna, a resident of Nassau County, is an "investigative blogger/ journalist with Plaintiff Nassau County NY News," an online blog. Compl. ¶ 6, ECF No. 1. Mr. McKenna "covers most every Nassau County Legislative meeting" by livestreaming the proceedings, interviewing public officials, and writing opinion pieces on issues covered at the meetings. *Id.* ¶ 14. On May 22, 2023, there was a meeting of the Nassau County Legislature to discuss the "proposed Las Vegas Sands Casino project." *Id.* ¶ 17. Mr. McKenna attended this meeting, as did reporters from

---

[1] I assume the validity of all facts plausibly pleaded. *See Polito v. City of New York*, No. 15-CV-2301 (ERK) (RML), 2017 WL 6542457, at *1 (E.D.N.Y. Dec. 21, 2017). I also refer to events captured in the video of the legislative meeting, of which I may properly take judicial notice. *See infra* Discussion, Section III.

other media outlets including News 12 Long Island, Newsday, and Chanel 4. *Id.* ¶ 19. "All journalists who were photographing or videorecording were permitted to stand at the railing in front of the legislative body." *Id.* ¶ 20.

During the public comments portion of the meeting, Mr. McKenna spoke for approximately three minutes at the lectern set up for members of the public and lodged several accusations at members of the Nassau County Legislature, including Mr. Nicolello. *Id.* ¶ 21; Nassau County Legislature, Full Legislature Meeting at 1:38:50–1:42:04 (May 22, 2023) ("Video"), http://nassaucountyny.iqm2.com/Citizens/SplitView.aspx?Mode=Video&MeetingID=2079&Format=Agenda. He accused Mr. Nicolello of not doing his job and of rescheduling the public comments portion of the May 22, 2023 meeting to hours earlier than it was originally scheduled to decrease public engagement with the casino project. *See* Video 1:38:50–1:42:04. He also insinuated that Nassau County officials had a financial interest in the casino project and that they instructed members of the Legislature to approve the project for that reason. *See id.* (indicating that he would "follow the money" to uncover why officials supported the casino project). Finally, Mr. McKenna concluded his remarks by threatening: "Make no mistake about it. You are all going to be held accountable this coming November." *Id.* Once Mr. McKenna finished, Mr. Nicolello clarified that he moved the public comments section of the meeting forward to reserve the latter portion of the meeting for the casino project exclusively, which, he said, would be "long [and] complicated." *Id.* After a few additional speakers presented, Mr. Nicolello put the Legislature in recess and indicated that it would re-convene a few hours later. *Id.*

Approximately three hours later, Mr. Nicolello called the meeting to order to discuss the casino project. *Id.* 4:33:00. He "directed all members of the public except for the [p]ress to step

back from the railing [and take a seat] while the Las Vegas Sands executives were before the Legislature." Compl. ¶ 24. Mr. McKenna continued to stand near the railing and livestream the proceeding from his phone. *See* Video 4:33:00–4:34:20; Compl. ¶ 25. Mr. Nicolello then "singled [Mr.] McKenna out from the scrum of reporters and asked him . . . specifically to . . . step away from the reporters and to take a seat," Compl. ¶ 25, to which Mr. McKenna replied that he was "a member of the media," Video 4:33:00–4:34:20. Mr. Nicolello responded that Mr. McKenna was not a member of the press and reiterated his request for Mr. McKenna to sit down. *Id.* Mr. McKenna refused. *Id.* Mr. Nicolello then warned Mr. McKenna that he would be removed from the meeting if he did not take a seat. *Id.* He explained that Mr. McKenna was permitted to livestream the proceeding but that he needed to do so from a seat because "[i]f you could have one person up here [at the railing] with their cameras, you could have twenty." *Id.* After Mr. McKenna continued to refuse to sit down, Mr. Nicolello ordered Nassau County Police officers to remove him from the meeting. *Id.*; Compl. ¶ 26.

I understand Mr. McKenna to be alleging violations of his: First Amendment rights to freedom of speech and freedom of the press under theories of equal access and First Amendment retaliation; Equal Protection rights; and New York State rights of free speech and association, as guaranteed by Article 1 Section 8 of the New York Constitution. *See* Compl. ¶¶ 28–48; Pls.' Opp'n Mot. Dismiss 11–13 (Pls.' Opp'n), ECF No. 13. Defendants move to dismiss Mr. McKenna's complaint in its entirety, arguing that: Mr. McKenna failed to state First Amendment and Equal Protection claims; the court lacks subject matter jurisdiction to review Mr. McKenna's New York State Constitution claims; Mr. Nicolello is entitled to qualified immunity; Nassau County News NY is a non-jural entity that lacks the capacity and standing to sue; and that the Nassau County Police Department is a non-suable entity. Defs.' Mot. Dismiss (Defs.' Mot.), ECF No. 12-7.

## LEGAL STANDARD

### I.    Standing

Article III standing is an essential element of a federal court's subject matter jurisdiction. To have standing, a plaintiff must allege that: "he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). These requirements apply to "each plaintiff" in a case, *Gutterman v. Herzog*, 20-CV-1081 (AMD) (LB), 2020 WL 6728787, at *4 (E.D.N.Y. Nov. 16, 2020) (quoting *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 409 F. Supp. 3d 261, 266 (S.D.N.Y. 2019)), and ensure that federal courts only resolve real "controvers[ies] with real impact on real persons," *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quotation omitted).

### II.    Motion to Dismiss Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), I must "accept all factual allegations as true" and "draw all reasonable inferences in favor of the plaintiff[]." *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021) (quotation omitted). A claim is sufficiently plausible to withstand a motion to dismiss when the "pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a claim has facial plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"On a 12(b)(6) motion to dismiss, the Court must limit its 'consideration to facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference.'" *L. Prac. Mgmt. Consultants, LLC v. M&A Couns. & Fiduciaries, LLC*, 599 F. Supp. 2d 355, 358 (E.D.N.Y. 2009) (quoting *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005)). Federal Rule of Evidence 201 permits me to take judicial notice of, *inter alia*, facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Even if I believe that the accuracy of a source cannot be reasonably questioned, in the motion to dismiss context, I may take judicial notice of documents only "to determine what statements [the documents] contain[]," not for the truth of the matters asserted therein. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). When the document at issue is a video of real-world events and its accuracy cannot be reasonably questioned, I may assume that the events transpired as depicted in the video, without assuming the truth of any statements made by the speakers in the video. *See e.g., Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 264 (S.D.N.Y. 2019). If a party wishes me to "consider additional material [beyond judicially noticed materials], Rule 12(b) requires [me] to treat the motion as one for summary judgment under Rule 56, giving the party opposing the motion notice and an opportunity to conduct necessary discovery and to submit pertinent material." *Id.* at 773.

Finally, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000). When a counseled party's opposition papers address some claims and not others, however, this may imply that the plaintiff has abandoned the unaddressed claims. *See Garcia v. Jackson Hurst Partners LLC*, No. 18-CV-3680 (LG), 2018 WL 4922913, at *2 (E.D.N.Y. Oct. 10, 2018); *Sullivan v. City of New York*, No. 14-CV-1334 (JMF), 2015 WL

5025296, at *5 (S.D.N.Y. Aug. 25, 2015).

### III.    First Amendment

A threshold issue in any First Amendment inquiry is whether the asserted First Amendment right exists—"if it [doe]s not, we need go no further." *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). The First Amendment guarantees to members of the press a right of equal access to areas that have been opened to participation by some of the media. *See Am. Broad. Cos. v. Cuomo*, 570 F.2d 1080, 1083 (2d Cir. 1977) [hereinafter *ABC*] ("[O]nce there is . . . participation by some of the media, the First Amendment requires equal access to all of the media."). This right of equal access, however, is not absolute. If a selective restriction on a reporter's access to an area otherwise open to the press is content-neutral, to survive First Amendment scrutiny the restriction must serve a legitimate governmental objective and "the benefits derived from the restriction [must be] greater than the benefits that would result from lifting the restriction." *Nicholas v. Bratton*, 376 F. Supp. 3d 232, 260 (S.D.N.Y. 2019). Any restriction that prevents a journalist from accessing areas otherwise open to the press due to the content of the journalist's expressive activity, on the other hand, must survive strict scrutiny to pass First Amendment muster. *See id.* at 260 n.16.

The First Amendment also protects individuals against retaliation for engaging in First Amendment activity. To sufficiently plead a First Amendment retaliation claim a plaintiff must show: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

Finally, the forum in which the protected speech occurs impacts the level of constitutional scrutiny the restriction receives.  *Cornelius*, 473 U.S. at 797 ("Assuming . . . protected speech [has

6

occurred], we must identify the nature of the forum, because the extent to which the Government may limit [speech] depends on whether the forum is public or nonpublic."). The forum analysis is a "means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for [expressive] purposes." *Id.* at 800. Government property can fall into one of four different types of fora: "(1) the traditional public forum; (2) the designated public forum; (3) the limited public forum; and (4) the non-public forum." *R.O. ex rel. Ochshorn v. Ithaca City Sch. Dist.*, 645 F.3d 533, 539 (2d Cir. 2011). In a limited public forum,[2] "speech restrictions . . . must be viewpoint-neutral and reasonable in light of the forum's purpose." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 507 (S.D.N.Y. 2013).

## IV.  Equal Protection

The Equal Protection Clause protects individuals from being "intentionally treated differently from others similarly situated," even if the plaintiff does not allege membership in a class or group, when there is "no rational basis for the difference in treatment." *Vill. of Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). If an equal protection claim "merely restate[s] a First Amendment retaliation claim," however, "courts in the Second Circuit have dismissed [the] equal-protection claim[]" as duplicative. *Best Payphones, Inc. v. Dobrin*, 410 F. Supp. 3d 457, 484 (E.D.N.Y. 2019) (collecting cases). This is because "courts should not unnecessarily stretch sections of the Constitution to reach wrongs already covered by other sections." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

---

[2] The parties here do not contest that the actions at issue took place in a limited public forum. *See* Defs.' Mot. at 8; Pls.' Opp'n at 15. As discussed later, *see infra* 18, they are correct.

V.    **Qualified Immunity**

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). Although it is important to resolve "immunity questions at the earliest possible stage in litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), "advancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch." *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020). Defendants presenting a qualified immunity defense on a motion to dismiss must face the "stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d. Cir. 2004). The plaintiff is therefore "entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* As a result, qualified immunity arguments at the motion to dismiss phase are "usually not successful." *Chamberlain*, 960 F.3d at 111.

**DISCUSSION**

I.    **All Claims by Nassau County News NY and Against Nassau County Police Department Are Dismissed**

**A.  Nassau County News NY Does Not Have Standing to Sue**

Defendants argue that Nassau County News NY lacks standing to sue on two separate grounds. First, they argue that "there is nothing to suggest a blog or website may be recognized as a 'citizen' or 'other person' capable of maintaining a Section 1983 claim [and therefore the blog] has no standing to bring such a claim." Defs.' Mot. 18. Defendants fail to cite any case law or other source to support this assertion. Instead, for support they simply quote Section 1983's language guaranteeing a cause of action to "any citizen or other person" who experiences a civil rights

violation. 42 U.S.C. § 1983. Second, defendants argue that Nassau County News NY lacks standing to sue because the complaint "is devoid of any allegations that [the] blog itself suffered any injury in fact." Defs.' Mot. 19 (quotations omitted). Plaintiffs fail to address either of these arguments. *See generally* Pls.' Opp'n.

Although plaintiffs allege that "Defendants' policies . . . caus[ed] irreparable harm to . . . [their] freedom of press," they fail to provide facts detailing the irreparable harm that Nassau County News NY itself experienced. Compl. ¶ 32. Instead, plaintiffs only articulate harms that Mr. McKenna experienced. *Id.* ¶ 25 ("Defendant Nicollelo . . . singled Plaintiff McKenna out from the scrum of reporters and asked him . . . to take a seat"); *id.* ¶¶ 26–27 (alleging that Mr. Nicollelo ordered Mr. McKenna's ejection from the legislative meeting after he refused to sit down). By not pleading facts specific to the harm that Nassau County News NY experienced beyond conclusory allegations of injury, plaintiffs fail to establish that Nassau County News NY experienced a concrete injury sufficient for standing purposes. *See Kelen v. Nordstrom, Inc.*, 259 F. Supp. 3d 75, 81–82 (S.D.N.Y. 2016) (determining that "conclusory claims of harm do not suffice" to plead a concrete injury in fact for standing purposes); *Gutterman*, 2020 WL 6728787, at *4 (dismissing claims where the complaint failed to make injury allegations specific to "each plaintiff"). Because plaintiffs fail to adequately allege standing for Nassau County News NY, the claims brought by Nassau County News NY are dismissed without prejudice.[3]

### B.  Nassau County Police Department Is a Non-Suable Entity

Defendants correctly argue that "[u]nder New York law, the Nassau County Police Department is considered an administrative arm of the County, without a legal identity separate

---

[3] Because I must dismiss the claims brought by Nassau County News NY for lack of subject-matter jurisdiction, I decline to consider defendants' argument that Nassau County News NY lacks capacity to sue under Section 1983.

and apart from the municipality and, therefore, [does not have] the capacity to sue or be sued." *Aguilera v. Cnty. of Nassau*, 425 F. Supp. 2d 320, 323 (E.D.N.Y. 2006); *see* Defs.' Mot. 19. Plaintiff fails to respond to this argument. *See generally* Pls.' Opp'n. Because Nassau County Police Department is a non-suable entity and no amendment to the pleadings could change this, I dismiss all claims against it with prejudice. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.,* 626 F.3d 699, 725 (2d Cir. 2010) ("Reasons for a proper denial of leave to amend include . . . futility of amendment.") (quotation omitted).

## II.     Plaintiff Mr. McKenna's State Law Claims Are Dismissed Without Prejudice

Mr. McKenna agrees that all of his New York State claims "are currently barred for not filing a notice of claim," and therefore "consents to their dismissal." Pls.' Opp'n 6. As such, all of Mr. McKenna's New York State law claims are dismissed without prejudice.

## III.     Judicial Notice of Materials Not in the Complaint Is Appropriate

To support the statement of facts in their motion to dismiss, defendants have appended a number of materials. Defendants argue that I may consider a video recording of the legislative meeting at which Mr. McKenna was ejected; two of Nassau County News NY's Facebook posts, which defendants argue undermine plaintiff's claim that his speech was chilled; and the Nassau County Legislature Procedural Rules. Defs.' Mot. 6, 11; *id.*, Exs. B–C, ECF Nos. 12-3, 12-4 (Facebook posts); *id.* Ex. D, ECF No. 12-5 (video); *id.* Ex. E, ECF No. 12-6 (procedural rules). Defendants contend that I may consider these materials because "they are all either matters of public record, integral to or referenced in the Complaint, and/or documents within plaintiff's knowledge or possession." Defs.' Mot. 6. Although plaintiff has "no problem with the video being referenced for purposes of deciding this . . . motion" and does not object to my consideration of the procedural rules, he objects to defendants' argument that I should consider the Facebook posts.

Pls.' Opp'n 4 n.1, 6, 13–14. Plaintiff argues that the Facebook posts are "extrinsic evidence" and are therefore "improper" to consider on "a motion to dismiss." *Id.* at 13.

Although this case arises on a motion to dismiss, I may properly take judicial notice of the Nassau County Legislature meeting video depicting Mr. McKenna's comments and ejection and the Nassau County Legislature Procedural Rules. Courts may generally take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), which include documents that have been made publicly available. *See e.g., Richardson v. N.Y.C. Bd. of Educ.*, 711 F. App'x 11, 13 (2d Cir. 2017) (noticing "a city regulation and two collective bargaining agreements . . . [because they] are all public documents"); *Apotex Inc. v. Acorda Therapeutics, Inc.,* 823 F.3d 51, 60 (2d Cir. 2016) ("We may properly take judicial notice of this document . . . because . . . [it] is publicly available and its accuracy cannot reasonably be questioned."). Documents that have been made publicly available can include videos. *See, e.g., Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 264 (S.D.N.Y 2019) (taking judicial notice of a defendant's television interview to discern what statements the defendant made); *Barich v. City of Cotati*, No. 21-CV-00034 (EMC), 2021 WL 3053204, at *6 (N.D. Cal. July 20, 2021) ("First, the Court may take judicial notice of the video and minutes of the City Council meetings because they are matters of public record."). The video of the Nassau County Legislature meeting from which Mr. Mckenna was ejected is publicly available on the Nassau County Legislature website.[4] Further, there is no dispute as to the video's authenticity and plaintiff has expressed no objection to my consideration of it. I therefore take judicial notice of the video. Because there is no dispute about the accuracy of the Nassau

---

[4] Nassau County Legislature, Full Legislature Meeting (May 22, 2023), http://nassaucountyny.iqm2.com/Citizens/SplitView.aspx?Mode=Video&MeetingID=2079&Format=Agenda.

County Legislature Procedural Rules and they were "promulgated by or binding on a government [entity]," I also take judicial notice of the Nassau County Legislature Procedural Rules. *Richardson* 711 F. App'x at 13.

I may also properly take judicial notice of the Facebook posts. Courts have regularly taken judicial notice of publicly available social media posts, news articles, and other writings on websites when the parties do not dispute the authenticity of the documents. *See, e.g., Finn v. Barney,* 471 F. App'x 30, 32 (2d Cir. 2012) (affirming a district court's decision to take judicial notice of "news articles respecting . . . [a] SEC Order" and "a section of . . . [a] website"); *Christa McAuliffe,* 364 F. Supp. 3d at 263 (taking judicial notice of a defendant's tweets); *Boesen v. United Sports Pubs., Ltd.,* No. 20-CV-1552 (ARR) (SIL), 2020 WL 6393010, at 5 n.6 (E.D.N.Y. Nov. 2, 2020) ("Plaintiff does not contest the authenticity of the Facebook posts defendant submitted . . . . Thus, I may take judicial notice of these posts."). Although Mr. McKenna objects to my consideration of these documents, he does not dispute the documents' authenticity. Additionally, I am not taking notice of the social media posts for the truth of the matters asserted therein. Instead, I am noticing them for the simple fact that statements were made. My consideration of these social media posts is, therefore, appropriate at this stage.

## IV. Plaintiff Mr. McKenna Adequately Alleges a Violation of His First Amendment Rights to Freedoms of Press and Speech

I read Mr. McKenna's complaint and opposition to defendants' motion to dismiss as alleging that defendants' actions violated his right to equal access as a journalist and his right to be free from retaliation based on the content of his speech and the viewpoint he expresses.

### A. Journalists' Rights of Equal Access

Although a journalist has a right of equal access to spaces that have been opened to other journalists, *see ABC*, 570 F.2d at 1083, the government may restrict a reporter's access to certain

areas to which other reporters have access as long as that restriction is, among other requirements, content neutral, *see Bratton*, 376 F. Supp. at 259–60 & n.16 (articulating the limitations on the equal access rule). To determine whether state action is content based or content neutral, "the 'principal inquiry . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.'" *Hobbs v. Cnty. of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). A restriction issued in retaliation for critical speech can qualify as a content-based or viewpoint-based restriction, and so case law on what is required to establish a retaliatory motive is also instructive. *See e.g., Bratton*, 376 F. Supp. 3d at 269 (denying the defendants' motion for summary judgment on a journalist's equal access claim because a reasonable juror could conclude that defendants denied the journalist equal access to an emergency rescue scene in retaliation for the viewpoint he expressed in his previous reporting, which was critical of the defendants); *Stevens v. N.Y. Racing Ass'n*, 665 F. Supp. 164, 175 (E.D.N.Y. 1987) (explaining that a reasonable juror could conclude that the defendant issued the plaintiff a restricted press pass in retaliation for the content of his previous reporting which it felt "made him appear bigger than defendant's events"). Plaintiffs alleging a retaliatory motive can survive a motion to dismiss as long as the facts as alleged support a "reasonable inference" that the protected activity caused the retaliation. *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 295 (S.D.N.Y. 2019). Facts that could support a reasonable inference that the protected activity caused the retaliation may include circumstantial evidence, such as "the plaintiff . . . [being] singled out," *Lang v. Town of Tusten*, No. 14-CV-4136 (VB), 2015 WL 5460110, at *6 (S.D.N.Y. Aug. 6, 2015) (quoting *Blue v. Koren*, 72 F.3d 1075, 1082–83 (2d Cir. 1995)), and temporal proximity between the protected activity and the retaliatory action, *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).

Mr. McKenna has adequately alleged a violation of his First Amendment right to equal access. First, Mr. McKenna alleges that he is "an investigative blogger/journalist with . . . Nassau County News NY," Compl. ¶ 6, and provides facts to support this assertion including that: "[His] footage has been used on most major media outlets on Long Island;" he "interviews public officials;" and he "writes opinion pieces about the issues at . . . [Nassau County Legislative] meetings." *Id.* ¶¶ 8, 14. He also alleges, and defendants do not dispute, that Mr. Nicolello ordered only Mr. McKenna to move away from a railing at the front of the room where other journalists were conducting newsgathering activities and then expelled him from the meeting when he asserted his right to equal access and refused to sit. *Id.* ¶¶ 24–27.

Second, Mr. McKenna argues that Mr. Nicolello singled him out from the other reporters and ultimately ejected him from the meeting because he "was offended" by the viewpoint Mr. McKenna expressed in statements delivered approximately three hours earlier during the public comments portion of the meeting. Compl. ¶¶ 21–22, 30. Defendants, on the other hand, argue that Mr. McKenna's assertion that his comments offended Mr. Nicolello is insufficient to form the basis of a First Amendment claim because it is a conclusory allegation. Defs.' Mot. 3. The video, however, provides additional factual material that makes plausible Mr. McKenna's allegation that Mr. Nicolello's actions were viewpoint based. During the public comments portion of the meeting, Mr. McKenna critiqued Mr. Nicolello and other members of the Nassau County legislature, threatening that they would be held accountable for their actions come election season. *See* Video 1:38:50–1:42:04 (alleging that Mr. Nicolello was not doing his job, that he deliberately moved the public comments portion of the meeting to discourage public participation, and that members of the legislature were favorable toward the Casino project because they had a financial interest in it). The critical viewpoint that Mr. McKenna expressed supports his allegation that Mr. Nicolello's

later actions were retaliatory. *See Bratton*, 376 F. Supp. 3d at 266 ("Suspicion that viewpoint discrimination is afoot is at its zenith when the speech restricted is speech critical of the government, because there is a strong risk that the government will act to censor ideas that oppose its own." (quotation omitted)).

Also, Mr. Nicolello's allegedly retaliatory actions occurred approximately three hours after Mr. McKenna made his critical statements. *See* Video 4:33:00–4:34:20. This tight temporal proximity further supports Mr. McKenna's allegation that Mr. Nicolello targeted him for adverse treatment because of his prior comments. *See Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 511–13 (E.D.N.Y. 2011) (collecting cases in the Second Circuit finding temporal proximity sufficient to support an inference of retaliation where there was a short gap between the protected activity and retaliatory action). Finally, Mr. McKenna's refusal to sit down after Mr. Nicolello requested that he do so is not, by itself, enough to disrupt the causal connection between Mr. McKenna's comments and his removal from the meeting. In fact, Mr. McKenna's refusal to sit is tightly connected, both temporally and causally, to Mr. Nicolello's allegedly content-motivated decision to single him out for adverse treatment among the other journalists in the first place. Mr. McKenna asserted his right to equal access by refusing to sit because Mr. Nicolello singled him out for adverse treatment when he ordered him to step away from the railing, and Mr. McKenna's removal from the meeting occurred mere seconds after Mr. Nicolello initially targeted him.

Ultimately, at this stage, considering both the video evidence and that "[m]otive and intent . . . [are] difficult to plead with specificity in a complaint," *Gusler v. City of Long Beach*, 823 F. Supp. 2d 98, 131 (E.D.N.Y. 2011), Mr. McKenna has pleaded sufficient facts to plausibly allege that Mr. Nicolello singled him out and ultimately ejected him from the meeting due to the content of his prior comments, thereby violating his right to equal access.

Defendants maintain that Mr. Nicolello asked only Mr. McKenna to take a seat and ultimately expelled him not in response to the viewpoint he expressed in his earlier comments, but instead to preserve "decorum." Defs.' Mot. 9. In the video, Mr. Nicolello indicates that Mr. McKenna is not a journalist, that only members of the press are permitted to stand at the railing, and that "if you could have one person [at the railing] . . . with their cameras, you could have twenty." *See* Video 4:33:00–4:34:20. Defendants argue that Mr. Nicolello had the legal authority to act against Mr. McKenna because the Nassau County Legislature Procedural Rules give the Presiding Officer the authority to "preserve order and decorum." Defs.' Mot 9; *Id.*, Ex. E, ECF No. 12-6.  Further, defendants assert that the Nassau County Legislature is a limited public forum in which "a government entity may impose restrictions on speech that are reasonable and viewpoint neutral." Defs.' Mot. 8 (quoting *Good News Club v. Milford Ctrl. Sch.*, 533 U.S. 98, 106–107 (2009)).

Mr. Nicolello's assertion that Mr. McKenna was not a journalist suggests that Nassau County may have some credentialing system that determines which journalists may cover legislative meetings as members of the press per se. Whether Nassau County requires that journalists be credentialed to cover legislative meetings, whether Mr. McKenna is so credentialed, and whether the other journalists at this meeting who were neither asked to sit down nor kicked out were also credentialed are unresolved questions of fact. Before he was asked to sit down, Mr. McKenna was standing at the railing with the other journalists livestreaming the proceedings on his phone—behavior that was no more disruptive than that of the other journalists. *See* Video 4:33:00–4:34:20. If Nassau County does require that journalists be credentialed to cover legislative meetings and Mr. McKenna has not conformed to the requirements, then Mr. McKenna's inference that Mr. Nicolello singled him out due to the content of his prior comments is much weaker.

Instead, Mr. McKenna's non-conformance to the credentialing rules could provide an alternative basis for Mr. Nicolello's actions.

If these credentialing requirements do not exist, however, then defendants' asserted basis for singling Mr. McKenna out in the first place—to preserve decorum—is much weaker because Mr. McKenna was simply covering the legislative meeting, like the other journalists in attendance. Without knowledge of these facts and considering in a light most favorable to the plaintiff the well-pleaded facts—including the content of Mr. McKenna's statements, the temporal proximity between his comments and Mr. Nicolello's adverse actions, and that Mr. Nicolello treated only Mr. McKenna adversely—Mr. McKenna's allegations are sufficient to support a reasonable inference that Mr. Nicolello acted against him due to the viewpoint he expressed during his prior comments.[5] *See Nicholas v. City of New York*, No. 15-CV-9592 (JPO), 2017 WL 766905, at *5–6 (S.D.N.Y. Feb. 27, 2017) (denying defendants' motion to dismiss, concluding that "the motivation underlying the limitations on [plaintiff's] news-gathering [was] properly the subject of additional

---

[5] Mr. McKenna alleges, "upon information and belief," that Nassau County does not require journalists be credentialed to cover legislative meetings. Compl. ¶ 15. He fails, however, to provide a statement of facts upon which this belief is founded. *See Murray v. UPS*, No. 20-CV-1427 (MKB), 2022 WL 4468295, at *9 (E.D.N.Y. Sept. 25, 2022) (explaining that courts in the Second Circuit have required that "allegations upon information and belief be accompanied by a statement of facts upon which the belief is founded"). The only basis that plaintiff provides for this belief is that "Defendant Nassau County has not responded to FOIL requests asking for its policies regarding the Press." Compl. ¶ 15. Failure to respond to a FOIL request, however, is not a basis upon which to conclude that the requested documents do not exist. *See Davis v. Guarino*, 52 F. App'x 658, 569 (2d Cir. 2002) ("[Defendant's] failure to respond [to a FOIL request] operates as a denial of the request."). Because Mr. McKenna fails to provide a statement of facts to support his allegation upon information and belief that Nassau County does not require journalists covering legislative meetings be credentialed, I do not have to take that allegation as true. Although defendants have asserted that Nassau County does credential journalists, *see* Defs.' Mot. 2, it is still unclear whether journalists must be credentialed to cover the legislative meetings and whether the other journalists at the meeting were credentialed. As a result, even after striking Mr. McKenna's assertions about credentialing from the complaint, the other facts as alleged are still sufficient to support Mr. McKenna's First Amendment claim.

factual development," where the plaintiff alleged that defendants' selectively restricted his access to a disaster zone "because of his [prior] work," but the defendants alleged they restricted his access due to the "exigency of the situation").

Defendants' limited public forum arguments are also unavailing at this stage. Public meetings such as that of the Nassau County Legislature are limited public fora. *See e.g., Tyler v. City of Kingston*, 593 F. Supp. 3d 27, 31 (N.D.N.Y. 2022) ("A public City Council meeting . . . is normally considered a limited public forum"), *aff'd* 74 F.4th 57, 61 (2d Cir. 2023)); *Madden v. Town of Hempstead*, No. 16-CV-6835 (SJF) (AKT), 2019 WL 1439935, at *14 (E.D.N.Y. March 29, 2019) (citing a string of cases for the proposition that "a public meeting of an elected municipal board . . . is considered to be a limited public forum"). In a limited public forum, "speech restrictions . . . must be viewpoint-neutral and reasonable in light of the forum's purpose." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 507 (S.D.N.Y. 2013). As I discussed earlier, however, Mr. McKenna has plausibly alleged that Mr. Nicolello singled him out from among the other reporters and ejected him from the meeting because of the viewpoint he expressed in his public comments. As a result, at this stage of the proceeding, Mr. Nicolello's actions fail the viewpoint-neutral prong of the limited public forum test.

## B. First Amendment Retaliation

Mr. McKenna also adequately alleges a First Amendment violation under a theory of retaliation. To make out a claim for First Amendment retaliation a plaintiff must plead facts supporting an inference that: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). To adequately plead causation a plaintiff need only to allege facts that establish a

reasonable inference of causal connection. *See Posr v. Ct. Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999). A reasonable causal inference can be established by pointing to circumstantial evidence such as "unequal treatment by a defendant," *Santucci v. Levine*, No. 17-CV-10204 (NSR), 2019 WL 3742286, at *12 (S.D.N.Y. Aug. 8, 2019), or a sequence of events whereby "protected speech [is] followed by adverse treatment," *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 32 (2d Cir. 2012). Further, a plaintiff can plausibly plead a First Amendment injury by alleging either "that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Dorsett*, 732 F.3d at 160. Government retaliation adversely affects speech when the plaintiff can show either that it resulted in a direct prohibition of his or her speech, *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 427 (S.D.N.Y. 2013), or that it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Mr. McKenna has a First Amendment right to speak during the public comments portion of the Nassau County Legislative meeting and to not be retaliated against for doing so. *See Santulli v. Russello*, 519 F. App'x 706, 708–09 (2d Cir. 2013) ("It is clearly established that a person has the right to be free from retaliation for an exercise of First Amendment rights."); *Potanovic v. Town of Stony Point*, 651 F. Supp. 3d 677, 682 (S.D.N.Y. 2023) ("To be sure, the activity of speaking at Town Board meetings, within the purpose for which the limited public forum was opened, is protected speech."). Further, as I discussed previously, Mr. McKenna also has a First Amendment right of equal access as a journalist.

For the same reasons that I discussed previously, Mr. McKenna also has adequately alleged a causal relationship between his exercise of his First Amendment rights and Mr. Nicolello's

actions. Mr. Nicolello treated Mr. McKenna differently from the other journalists when he asked only Mr. McKenna to be seated and then ejected him from the meeting for asserting his right to stand with the press. Further, Mr. Nicolello's actions occurred only approximately three hours after Mr. McKenna made his comments, which were critical of Mr. Nicolello and other members of the Nassau County Legislature. These facts are adequate circumstantial evidence to create a reasonable inference of causal connection between Mr. McKenna's comments and Mr. Nicolello's actions.

Finally, Mr. McKenna has adequately alleged that he suffered an injury. Defendants argue that Mr. McKenna failed to state a First Amendment claim because he suffered only a "*de minimis*" injury, and he failed to show that his rights were chilled. Defs.' Mot. 10. Mr. McKenna alleges, and the video demonstrates, however, that he was ejected from the meeting—an action that completely snuffed out his First Amendment newsgathering activity. *See* Compl. ¶ 26; *Rodriguez*, 973 F. Supp. 2d at 419 (S.D.N.Y. 2013) (determining that a protester pleaded an "axiomatic 'direct prohibition'" First Amendment injury when he was arrested during a protest because, due to his arrest, his "expressive activity was not merely chilled, but was rather completely frustrated for the period of his arrest").

The cases defendants cite to support their de minimis injury argument are inapposite and involve allegations of indirect, chilling effect injuries, not direct prohibition injuries. *See Colondres v. Scoppetta*, 290 F. Supp. 2d 376, 381–82, 385 (E.D.N.Y. 2003) (determining that the plaintiff's alleged First Amendment injury— that a lien on her judgment, which represented only 14% of the judgment, violated her First Amendment right to petition for redress by "discourage[ing] her from continuing her lawsuit"—was de minimis); *Brown v. Stone*, 66 F. Supp. 2d 412, 436 (E.D.N.Y. 1999) (explaining in dicta that a hypothetical notice alerting patients who receive free psychiatric services from a state agency that they would have to pay for the services

if they later gained the ability to pay, including by suing the agency and receiving a damages award, would likely cause only a de minimis infringement on their First Amendment right of redress, especially considering that the repayment obligation would be limited to no more than the damages amount); *Arce v. Banks*, 913 F. Supp. 307, 309 (S.D.N.Y. 1996) (concluding that "at most" the plaintiff "suffered a de minimis infringement of his First Amendment rights" since the plaintiff's allegation that the defendant "yelled" at him "does not rise to the constitutional level" or "violate any constitutionally protected rights").

The cases defendants cite to support their argument that Mr. McKenna did not adequately allege that defendants chilled his rights similarly fail to address his allegation of a direct prohibition injury. *See Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (determining that the plaintiff failed to allege that her First Amendment rights were actually chilled after she received a letter from the defendant threatening a lawsuit because she testified in her deposition that receiving the letter did not restrict her speech); *Guan v. Mayorkas*, 530 F. Supp. 3d 237, 258–59 (E.D.N.Y. 2021) (determining that journalists "failed to plead the actual chilling of their First Amendment rights" when they alleged that they were deterred from covering border-related issues because border officers targeted them at the border for "secondary inspection and questioning," which made them afraid that they would experience the same tactics in the future); *Podlach v. Vill. of Southampton*, No. 14-CV-6954 (SJF) (SIL), 2017 WL 4350433, at *11 (E.D.N.Y. May 11, 2017), *report and recommendation adopted*, No. 14-CV-6954, 2017 WL 4350434 (E.D.N.Y. June 6, 2017) (concluding that the plaintiff's allegation that her experience of arrest would prevent her from "speaking with police officers in the future" was "wholly speculative and conclusory" and that she therefore failed to demonstrate that her "rights under the First Amendment were actually chilled").

*Williams v. Town of Greenburgh* is closest to addressing McKenna's direct prohibition allegation, but it also fails to do so. 535 F.3d 71 (2d Cir. 2008). In this case, the plaintiff brought a First Amendment retaliation claim against a town for expelling him from a community center after he called a town official who was present a "Junior Mussolini" who engaged in "intimidation tactics." *Id.* at 77. The Second Circuit granted the town's motion for summary judgment on this claim, concluding that the plaintiff failed to allege a First Amendment injury because he could not show that this retaliation silenced or chilled his speech. *Id.* at 78 ("After his initial expulsion from the Center, [plaintiff] petitioned a member of the Center's Advisory Board for readmission . . ." making clear that the plaintiff's "readiness to hold forth on his perceived mistreatment . . . was unimpaired by their allegedly punitive conduct"). The Court explained that the plaintiff failed to allege "facts indicating that [defendants] have deprived [him] of his constitutionally protected right to free speech." *Id.*

Unlike the plaintiff in *Williams*, however, whose expulsion did not snuff out any ongoing First Amendment activity, Mr. McKenna's expulsion from the Nassau County Legislature meeting ended his First Amendment newsgathering activity. Further, the Second Circuit in *Williams* concluded that the plaintiff lacked a liberty interest in gaining admission to the Center, whereas Mr. McKenna had a First Amendment right of equal access to the legislative meeting as a journalist. *Id.* at 74–76. Mr. McKenna's claim is, therefore, more like the plaintiff's claim in *Rodriguez v. Winski*, where the court concluded that the plaintiff experienced a First Amendment injury because his arrest immediately ended his First Amendment protest activity. 973 F. Supp. 2d at 426–27. The court in *Rodriguez* came to this conclusion even though the plaintiff stated, after his arrest, that he intended to participate in similar protest activities in the future. *Id.* at 427. Likewise, that the Facebook posts were about the Casino project—one of the topics of Mr.

McKenna's critical comments—and were posted after Mr. McKenna was kicked out of the legislative meeting, does not defeat his First Amendment claim at this stage because he alleged the more "axiomatic 'direct prohibition'" injury based on his expulsion from the meeting. *Id.* at 427 (quoting *Levin v. Harleston*, 966 F.2d 85, 89 (2d Cir. 1992)); *see also* Defs.' Mot. 11 (discussing the Facebook posts).

Defendants further argue that because "evidence shows that [Mr. McKenna] failed to comply with the Presiding Officer's directive that he be seated, and that he was only removed after he was warned of that consequence if he failed to comply," they had "probable cause" to remove him from the meeting, which, they argue, is "fatal to a First Amendment retaliation claim." Defs.' Mot. 9 (citing *Benny v. City of Long Beach*, No. 20-CV-1908 (KAM) (ST), 2022 WL 2967810, at *24 (E.D.N.Y. July 27, 2022)). Although it is true that "[t]he existence of probable cause will defeat . . . a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive," *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012), defendants fail to explain why this principle should apply to a case where there is no related criminal action and no arrest. As the Second Circuit has acknowledged, "[t]he probable-cause standard . . . is peculiarly related to criminal investigations," and this case involves no criminal investigation. *Mangino v. Inc. Vill. of Patchague*, 808 F.3d 951, 957 (2d Cir. 2015) (determining that probable cause could not defeat the plaintiff's First Amendment retaliation claim insofar as it was premised on the issuance of a non-criminal regulatory enforcement action) (quoting *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 828 (2002)). As such, defendants probable cause arguments are unavailing.

Finally, in their reply, defendants argue that I should dismiss Mr. McKenna's First Amendment claim as abandoned because his opposition "addresses only [his] Equal Protection

claim." Defs.' Reply 1. Specifically, defendants argue that plaintiff conceded these points by not responding to their arguments that there was probable cause, that Mr. McKenna's removal was a de minimis harm, and that Mr. McKenna failed to plead an actual chilling of his activities. *Id.* at 1–2. Contrary to defendants' arguments, however, Mr. McKenna did not address only the Equal Protection claim in his opposition. Although situated in the Equal Protection portion of his opposition, Mr. McKenna briefly discussed defendants' argument that he was removed "for the sake of decorum," instead of in retaliation for his prior comments—points that are relevant to his First Amendment retaliation claim. Pls.' Opp'n 13. Plaintiff also attempted to address defendants' argument that he failed to adequately allege chilling. *Id.* 13–14. Finally, even though plaintiff did not address defendants' arguments regarding de minimis harm and probable cause, I will not consider those arguments abandoned because, as I discussed previously, Mr. McKenna alleged a direct prohibition harm, and this case does not involve criminal matters.

## V.   Plaintiff Mr. McKenna Fails to Adequately Allege a Violation of His Equal Protection Rights.

Defendants argue that Mr. McKenna's Equal Protection claim should be dismissed for many reasons, including that the "equal protection claims . . . merely restate the First Amendment retaliation claims." Defs.' Mot. 13. In the Second Circuit, if an equal protection claim "merely restate[s] a First Amendment retaliation claim," courts have "dismissed [the] equal-protection claim[]" as duplicative. *Best Payphones, Inc. v. Dobrin*, 410 F. Supp. 3d 457, 484 (E.D.N.Y. 2019). Retaliation for his prior statements and for his journalism are the only bases that Mr. McKenna allege motivated defendants' actions against him, as opposed to the other journalists. *See* Compl. ¶ 30 ("All the actions taken against Mr. McKenna are in retaliation for his investigative journalism and for his statements concerning the publication of the meeting."). Mr. McKenna fails to explain,

however, how his journalism motivated Mr. Nicollelo's actions. In the Equal Protection portion of the complaint, Mr. McKenna articulates no other facts upon which those claims are based. *Id.*  ¶¶ 36–41. Because these are also the bases for Mr. McKenna's First Amendment claim and because Mr. McKenna fails to address defendants' argument that his Equal Protection claim is redundant of his First Amendment claim, I dismiss Mr. McKenna's Equal Protection claim without prejudice.

## VI.   Mr. Nicolello Is Not Entitled to Qualified Immunity at This Stage of the Proceeding

Defendants argue that Mr. Nicolello is entitled to qualified immunity on the First Amendment claim. *See* Defs.' Mot. 14–16. "Qualified immunity shields government employees from liability for conduct that 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Roucchio v. Coughlin*, 29 F. Supp. 2d 72, 81 (E.D.N.Y. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether a defendant claiming qualified immunity violated "clearly established" law, courts "consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Sabir v. Williams*, 52 F.4th 51, 62 (2d Cir. 2022). There does not need to be "precedent 'directly on point'" for law to be clearly established. *Id.* (quoting *District of Columbia v. Wesby* 138 S. Ct. 577, 590 (2018)). Further, "[b]ecause a 'reasonably competent public official should know the law governing his conduct,' qualified immunity 'ordinarily should fail' in cases where the law was clearly established.'" *Clark v. Boughton*, No. 3:21-CV-1372 (SRU), 2022 WL 4778582, at *15 (D. Conn. Oct. 3, 2022) (quoting *Harlow*, 457 U.S. at 818–19). Defendants specifically contend that no case suggests that: "(a) [Mr.] Nicolello's directive to [Mr.] McKenna to be seated with all the members of the public, or (b) [Mr.] McKenna's removal, after refusing to comply with the directive and being warned that he would be removed if he did not comply, violated [his] clearly

established constitutional rights." Defs.' Mot. 16. The Second Circuit has clearly established, however, that unjustified content-based discrimination between journalists violates the First Amendment right of equal access. *ABC*, 570 F.2d at 1083; *see also Bratton*, 376 F. Supp. 3d at 276–78 (determining that individual defendants were not entitled to qualified immunity on a journalist's equal access claim because the Second Circuit clearly decided that selective enforcement of press restrictions based on the content of a journalist's protected activity violates the First Amendment).

Because the law on a journalist's right to equal access is clearly established in the Second Circuit, a reasonable officer in Mr. Nicolello's position "'would not have believed that the First Amendment permitted [him] to choose which people could' gather news . . . [at the legislative meeting] with reference to 'content-based restrictions' on newsgathering." *Bratton*, 376 F. Supp. 3d at 277 (quoting *Deferio v. City of Syracuse*, 306 F. Supp. 3d 492, 517 (N.D.N.Y. 2018)). Additionally, Mr. McKenna's adequately pleaded allegation that Mr. Nicolello acted with a retaliatory purpose—an intent that First Amendment law prohibits—further supports the proposition that Mr. Nicolello's behavior was not objectively reasonable. *See Locurto v. Safir*, 264 F.3d 154, 169 (2d Cir. 2001) ( "[W]here a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law.").

Ultimately, the law in the Second Circuit clearly establishes a journalist's right to equal access and a reasonable officer would not have "failed to realize that content-based discrimination between different journalists . . . would run afoul of governing Second Circuit law." *Bratton*, 376 F. Supp. 3d at 277. As a result, at this stage in the proceeding, where I am required to view the facts in a light most favorable to Mr. McKenna—both as they may support his claim and defeat

the qualified immunity defense—Mr. Nicolello is not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, it is hereby ordered that:

All claims by Nassau County News NY are dismissed without prejudice and with leave to amend;

All claims against the Nassau County Police Department are dismissed with prejudice;

Defendants' motion to dismiss Mr. McKenna's First Amendment claim is denied. Because the First Amendment claim survives against Nassau County, the First Amendment claim against Mr. Nicolello in his official capacity is dismissed as redundant. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Schwasnick v. Fields*, No. 08-CV-4759 (JS) (ARL) 2010 WL 2679934 (E.D.N.Y. June 30, 2010) ("[A] court should dismiss Town Board Members from a lawsuit where both the town and its board members are named in their official capacities.").

Defendants' motion to dismiss Mr. McKenna's Equal Protection claim is granted and the claim is dismissed without prejudice;

Defendants' motion to dismiss Mr. McKenna's New York State law claims is granted and the claims are dismissed without prejudice.


SO ORDERED.

                                        _____/s/_____
                                        Allyne R. Ross
                                        United States District Judge


Dated:          December 6, 2023
                Brooklyn, New York